UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CYNTHIA KOLAKOWSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 08 C 1417 |
| ) | |
| TAYLOR DISTRIBUTORS OF ) | Judge Castillo |
| INDIANA, INC., ) | Magistrate Judge Mason |
| ) | |
| Defendant. ) | |

INITIAL STATUS REPORT

A.  Nature of the Case

1.  Bases for federal jurisdiction

Count I of this action is brought under § 501(a)(1)(A) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(A). Count II of this complaint is brought under ERISA § 501(a)(3), 29 U.S.C. § 1132(a)(3). The court has exclusive jurisdiction to entertain both pursuant to ERISA § 502(e)(1), 29 U.S.C § 1132(e)(1). Federal jurisdiction also lies under 28 U.S.C. §§ 1331, 1337(a).

2.  Nature of plaintiff's claims.

Count I of the complaint alleges violations of plaintiff's rights under those sections of ERISA (commonly known as "COBRA"), providing for the continuation of group health care coverage. ERISA § 603(2), 29 U.S.C. § 1163(2), required the defendant, as plaintiff's employer, to notify the administrator of defendant's group health plan, namely, Aetna Small Group PPO, that plaintiff's termination of employment on June 8, 2007, constituted a "qualifying event" under ERISA § 603(2), 29 U.S.C. § 1163(2). Under ERISA § 606(a)(2), 29 U.S.C. § 1166(a)(2), defendant's notification to Aetna was required to be made within 30 days of plaintiff's termination, or no later than July 8, 2007. In turn, and as required by ERISA § 606(a)(4)(A), Aetna would have had 14 days thereafter, on no later than July 22, 2007, to notify plaintiff of her right to "continuation of coverage" under the Aetna Small Group PPO. Defendant never notified Aetna, and by the

time plaintiff learned that her health insurance had terminated, it was too late to secure COBRA coverage.

Count II alleges that defendant's failure to provide COBRA notification to her was in retaliation for complaints plaintiff had made, on March 16, 2007, to the Employee Benefits Security Administration of the U.S. Department of Labor concerning defendant's statutory breaches related to the operation and administration of defendant's 401(k) plan in which plaintiff participated. (Defendant's breaches included its conversion of contributions that plaintiff and other employees had authorized defendant to withhold from their paychecks for remittance to Fidelity Investment, the administrator of the 401(k) plan.) This claim for retaliation – and after complaining to the DOL defendant began criticizing plaintiff's work as well as the fact that she was a whistle-blower – arises under ERISA § 510, 29 U.S.C. § 1140.

3. <u>Nature of defendant's defense</u>:

Dismissal for failure to name Proper Party of Interest pursuant to Federal Rules of Civil Procedure 12(B)(6) and/or 12(B)(7). Plaintiff names Taylor Distributors of Indiana, Inc. as the Defendant in this suit. Plaintiff was never employed by Taylor Distributors of Indiana, Inc. Plaintiff only worked for Taylor Chicago Distributors, Inc. (hereinafter "Taylor Chicago"). Plaintiff's payroll was drawn on an account solely for Taylor Chicago and any healthcare premium deductions or other payroll deductions were from Taylor Chicago's operating account. Taylor Chicago's only commonality with the named Defendant, is that each entity has common ownership and officers. Moreover, the small group health plan through Aetna provides insurance for both entities. While Taylor Chicago Distributors, Inc. was administratively dissolved on November 9, 2007 for failure to file its annual report, it has since been reinstated since February 26, 2008. As such, pursuant to 805 ILCS 5/12.45 (d) Taylor Chicago Distributors, Inc's corporate existence is deemed to have continued without interruption from the date of issuance of the certificate of dissolution.

Count I -Defendant admits not sending a timely notice of continuation coverage pursuant to § 603(2), 29 U.S.C. § 1163(2). Defendant did not send the applicable notice because Taylor Chicago Distributors gratuitously continued coverage for Plaintiff for three months after her voluntary termination and therefore believed it was unnecessary.

Prior to her voluntary termination, Plaintiff had indicated to Defendant that she would otherwise be gainfully employed upon leaving the company and may need COBRA coverage for "about a month" after leaving. Defendant continued Plaintiff's health care coverage for 3 months and was never contacted by Plaintiff again about any change in circumstances or about the need for COBRA coverage, until January 2008. Moreover, Plaintiff's June 4, 2007 email evidences her knowledge about COBRA coverage. She also now works for FlexSource, LLC., a company specializing in administering benefit packages. If she was uncertain about her coverage, she could have contacted Taylor Chicago sooner regarding the COBRA notification. Instead she accepted the three months of free coverage and after it was too late, she informed Taylor Chicago of its failure to provide said notice. If Plaintiff wanted or needed COBRA coverage, she would have contacted Taylor Chicago sooner. Plaintiff waived her right to a notice by accepting the gratuitous coverage and not requesting further information. Ms. Kolakowski clearly failed to mitigate her damages. The Notice requirement is designed to protect unknowledgeable employees of their rights to continued coverage. Plaintiff knew of her rights and failed to prevent her damages, or at a minimum, she failed to mitigate her damages.

Count II- Defendant denies any retaliation against Plaintiff. Taylor Chicago admits that at one time it fell behind in properly making the 401(K) contributions. Unfortunately, a previous office manager/controller of Taylor Chicago embezzled approximately $553,000 dollars. This crime nearly bankrupted Taylor Chicago. This action has since been prosecuted in the Cook County, Illinois Circuit Court under Judge Thomas Fecarotta, Jr. The former employee plead guilty to felony embezzlement, and thankfully, the she has now paid substantial restitution for her crime, including repayment of $530,000. Due to these unfortunate circumstances, Taylor Chicago did fall behind in contributions. However, all 401(K) payments/contributions have been up-to-date for Plaintiff's retirement account since fall of 2007. Taylor Chicago was not retaliating against Plaintiff and this is not an "exceptional" case meriting a steep daily penalty for failing to provide a notice. The penalty sought by Plaintiff is discretionary and can be reduced or ignored altogether. Monetary awards for technical violations of ERISA's notification provisions are usually not warranted. Only in exceptional circumstances such as where an employer acts in bad faith, actively conceals a benefit plan or otherwise prejudices an employee by inducing their reliance on a faulty plan summary. This case is by no means extraordinary. Given

the circumstances, a penalty of $100 per day is clearly unwarranted as Taylor Chicago's actions were in good faith reliance on Plaintiff's assertion that she only needed coverage for about one month before her new coverage became effective. Any daily penalty would be a windfall for plaintiff and an unnecessary burden to Taylor Chicago.

4. Relief sought by plaintiff.

(i) Defendant's payment of the premium costs to plaintiff, for no less than an 18 month period, needed to secure individual health insurance coverage, less what it would have cost plaintiff had she had the opportunity to elect COBRA coverage under the Aetna Small Group PPO in the summer of 2007. Plaintiff has been unable to secure private health insurance, but was quoted a monthly premium of $750.00 ($13,500 for 18 months) under the Illinois Comprehensive Health Insurance Plan (ICHIP). Plaintiff does not know what the COBRA cost to her would have been in the summer of 2007.

(ii) In the event plaintiff is uninsurable, then defendant's payment for a minimum of 18 months of all medically related costs and expenses she incurs that would have been covered under the Aetna Small Group PPO, had she had the opportunity to elect such coverage in the summer of 2007, less what it would have cost plaintiff had she had the opportunity to elect COBRA.

(iii) Defendant's payment of all medically related costs and expenses plaintiff has incurred since her employment terminated. To date, $1,203.56

(iv) Defendant's Payment of all costs and expenses that plaintiff incurs under any replacement health insurance plan that she would not have had to pay for had she had the opportunity to elect COBRA coverage in the summer of 2007. Under ICHIP there is a 24 month pre-existing condition exclusion, and plaintiff is diabetic.

(v) Defendant's payment to plaintiff the sum of $54,750, which represents, for an 18 month period, the $100 daily amount that an employer can be assessed pursuant to ERISA § 502(c)(1).

(vi) Defendant's payment of attorney's fees and costs pursuant to ERISA § 502(g)(1). To date (April 30, 2008), approximately $8,500.

5. <u>Names of parties not served</u>

   None.

6. <u>Major legal issues</u>

   Since defendant, in e-mail exchanges with plaintiff on January 8, 2008, has admitted that it "was very lax about sending you the cobra forms, which was completely our fault," from plaintiff's perspective the legal issues will focus on how to fashion the remedies, and why the court should exercise its discretion under ERISA § 502(c)(1) to award her the $54,750 referenced in ¶ 4(v).
   Plaintiff would cite *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 789 (7th Cir. 1996), for the proposition that the $100 daily penalty should be assessed in an "exceptional case" like this.

7. <u>Principal factual issues</u>

   Whether defendant's failure to provide COBRA notification to plaintiff was in retaliation for plaintiff's complaints to the DOL about defendant's 401(k) plan.

B. <u>Preparation of Draft Scheduling Order</u>

8. <u>Outline of the scheduling order required by Fed. R. Civ. P. 16(b)</u>

   (a) The parties, through counsel, shall have a Rule 26(f) conference on or before _____, 2008.

   (b) Rule 26(a)(1) disclosures shall occur on or before _____, 2008.

   (c) The joinder of other parties shall occur on or before _____, 2008.

   (d) Amendment to pleadings shall occur on or before _____, 2008.

   (e) Fact discovery shall be completed on or before _____, 2008.

   (f) Expert discovery shall be completed on or before _____, _____.

      (g) Dispositive motions shall be filed on or before _____, _____.

C. <u>Trial Status</u>

    9. There has been no request for a jury trial.

D. <u>Consent to Proceed Before a Magistrate Judge</u>

    10. The parties [do] [do not] consent to proceed before a Magistrate Judge for all proceedings including trial.

E. <u>Settlement Status</u>

    11. Plaintiff submitted a settlement demand to defendant and the parties, through counsel, have discussed the particulars of that demand as recently as April 30, 2008.

For the Plaintiff:

*/s/ Stephen B. Horwitz*
Stephen B. Horwitz
Sugarman & Horwitz, LLP
221 N. LaSalle St., Ste. 626
Chicago, IL 60601
312-629-2920

For Defendant:

*/s/ Shelli S. Anderson*
Thomas Vander Luitgaren
Shelli Sloan Anderson
Van Valer Law Firm, LLP
299 W. Main St.
Greenwood, Indiana 46142
317-881-7575

6