UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CYNTHIA KOLAKOWSKI, | ) |
| Plaintiff, | ) |
| vs. | ) 08 C 1417 |
| TAYLOR DISTRIBUTORS OF INDIANA, INC., | ) Magistrate Judge Mason |
| Defendant. | ) |

## JOINT STATUS REPORT OF AUGUST 6, 2008

A.  Nature of the Case

1.  Bases for federal jurisdiction

    Count I of this action is brought under § 502(a)(1)(A) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(A). Count II of this complaint is brought under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). The court has jurisdiction to entertain both pursuant to ERISA § 502(e)(1), 29 U.S.C § 1132(e)(1). Federal jurisdiction also lies under 28 U.S.C. §§ 1331, 1337(a).

    Count III and Count IV of the First Amended Complaint ("FAC") are also brought under ERISA § 502(a)(1)(A). The court has jurisdiction to entertain both Counts III and IV pursuant to ERISA § 502(e)(1), and federal jurisdiction also lies under 28 U.S.C. §§ 1331, 1337(a).

2.  Nature of Plaintiff's claims.

    Count I of the FAC alleges violations of Plaintiff's rights under those sections of ERISA (commonly known as "COBRA"), providing for the continuation of group health care coverage. ERISA § 603(2), 29 U.S.C. § 1163(2), required the Defendant, as Plaintiff's employer, to notify the administrator of Defendant's group health plan, namely, Aetna Small Group PPO, that Plaintiff's termination of employment on June 8, 2007, constituted a "qualifying event" under ERISA § 603(2), 29 U.S.C. § 1163(2). Under ERISA § 606(a)(2), 29 U.S.C. § 1166(a)(2), Defendant's notification to Aetna was required to be made within 30 days of Plaintiff's termination, or no later than July

8, 2007. In turn, and as required by ERISA § 606(a)(4)(A), Aetna would have had 14 days thereafter, on no later than July 22, 2007, to notify Plaintiff of her right to "continuation of coverage" under the Aetna Small Group PPO. Defendant never notified Aetna, and by the time Plaintiff learned that her health insurance had terminated, it was too late to secure COBRA coverage.

Count II alleges that Defendant's failure to provide COBRA notification to her was in retaliation for complaints Plaintiff had made, on March 16, 2007, to the Employee Benefits Security Administration of the U.S. Department of Labor concerning Defendant's statutory breaches related to the operation and administration of Defendant's 401(k) plan in which Plaintiff participated. (Defendant's breaches included its conversion of contributions that Plaintiff and other employees had authorized Defendant to withhold from their paychecks for remittance to Fidelity Investment, the administrator of the 401(k) plan.) This claim for retaliation – and after complaining to the DOL Defendant began criticizing Plaintiff's work as well as the fact that she was a whistle-blower – arises under ERISA § 510, 29 U.S.C. § 1140.

Counts III and IV allege that on February 25, 2008, Plaintiff, though counsel, made a written demand of Defendant to provide her with governing instruments, including the summary plan descriptions, for the Taylor Aetna Small Group PPO, and also requested governing instruments of the Taylor Chicago Distributors, Inc. 401(k) plan. Defendant did not provide these documents until July 25, 2008.

3. Nature of Defendant's defense:

Dismissal for failure to name Proper Party of Interest pursuant to Federal Rules of Civil Procedure 12(B)(6) and/or 12(B)(7). Plaintiff names Taylor Distributors of Indiana, Inc. as the Defendant in this suit. Plaintiff was never employed by Taylor Distributors of Indiana, Inc. Plaintiff only worked for Taylor Chicago Distributors, Inc. (hereinafter "Taylor Chicago"). Plaintiff's payroll was drawn on an account solely for Taylor Chicago and any health care premium deductions or other payroll deductions were from Taylor Chicago's operating account. Taylor Chicago's only commonality with the named Defendant is that each entity has one common shareholder and officer. Otherwise, these are two separate and distinct business entities contrary to the allegations in the Plaintiff's Amended Complaint. Moreover, the small group health plan through Aetna

2

provides insurance for both entities. While Taylor Chicago Distributors, Inc. was administratively dissolved on November 9, 2007 for failure to file its annual report, it has since been reinstated since February 26, 2008. As such, pursuant to 805 ILCS 5/12.45 (d) Taylor Chicago Distributors, Inc's corporate existence is deemed to have continued without interruption from the date of issuance of the certificate of dissolution.

Count I -Defendant admits not sending a timely notice of continuation coverage pursuant to § 603(2), 29 U.S.C. § 1163(2) due to written communication between Plaintiff and Defendant. Defendant did not send the applicable notice because Taylor Chicago Distributors continued coverage for Plaintiff for three months after her voluntary termination as a result of her written email message claiming she would need coverage for only an additional month after her termination date. Defendant continued Plaintiff's health care coverage for 3 months and was never contacted by Plaintiff again about any change in circumstances or about the need for COBRA coverage, until January 2008. Moreover, Plaintiff's June 4, 2007 email evidences her knowledge about COBRA coverage. She also now works for FlexSource, LLC., a company specializing in administering benefit packages. If she was uncertain about her coverage, she could have contacted Taylor Chicago sooner regarding the COBRA notification. Instead she accepted the three months of free coverage and after it was too late, she informed Taylor Chicago of its failure to provide said notice. If Plaintiff wanted or needed COBRA coverage, she would have contacted Taylor Chicago sooner. Plaintiff waived her right to a notice by accepting the gratuitous coverage and not requesting further information. Ms. Kolakowski failed to mitigate her damages. The Notice requirement is designed to protect unknowledgeable employees of their rights to continued coverage. Plaintiff knew of her rights and failed to prevent her damages, or at a minimum, she failed to mitigate her damages.

Count II- Defendant denies any retaliation against Plaintiff. Taylor Chicago admits that at one time it fell behind in properly making the 401(K) contributions. Unfortunately, a previous office manager/controller of Taylor Chicago embezzled approximately $553,000 dollars. This crime nearly bankrupted Taylor Chicago. This action has since been prosecuted in the Cook County, Illinois Circuit Court under Judge Thomas Fecarotta, Jr. The former employee plead guilty to felony embezzlement. Due to these unfortunate circumstances, Taylor Chicago did fall behind in

3

contributions. However, all 401(K) payments/contributions have been up-to-date for Plaintiff's retirement account since fall of 2007. Taylor Chicago was not retaliating against Plaintiff and this is not an "exceptional" case meriting a steep daily penalty for failing to provide a notice. The penalty sought by Plaintiff is discretionary and can be reduced or ignored altogether. Monetary awards for technical violations of ERISA's notification provisions are usually not warranted. Only in exceptional circumstances, such as where an employer acts in bad faith, actively conceals a benefit plan or otherwise prejudices an employee by inducing their reliance on a faulty plan summary. This case is by no means extraordinary. Given the circumstances, a penalty of $100 per day is clearly unwarranted as Taylor Chicago's actions were in good faith reliance on Plaintiff's assertion that she only needed coverage for about one month before her new coverage became effective. Any daily penalty would be a windfall for Plaintiff and an unnecessary burden to Taylor Chicago.

Count III & IV- Defendant admits that it provided all requested documents on July 25, 2008. Any failure to provide the documents sooner resulted due to a change in the benefits administration providers. Second, Plaintiff did not make a request for any plan documents for more than eight months after her termination. This unreasonable delay in her request for Plan documents warrants the court to balance equity and use its discretionary powers to decline imposing any ERISA penalties regarding the same. In addition, any harm suffered by Plaintiff for any delay in producing Plan documents was minimal given that she had already secured medical insurance coverage through ICHIP, and a lawsuit was filed shortly after the time her attorney made said request. Finally, the request for plan documents set forth were not addressed to the Plan Administrator. The Plan Administrator for the Aetna Small Group PPO is Marla Lorenz. Any delay in providing plan documents was not done in bad faith and does not warrant a penalty.

4. Relief sought by Plaintiff.

(i) Defendant's payment of the premium costs to Plaintiff, for no less than an 18 month period, needed to secure individual health insurance coverage, less what it would have cost Plaintiff had she had the opportunity to elect COBRA coverage under the Aetna Small Group PPO in the summer of 2007. Plaintiff was unable to secure private health insurance, but was accepted into the Illinois Comprehensive Health Insurance Plan (ICHIP). Her monthly ICHIP premium is

$670.00 or $12,060.00 over the course of the next 18 months, i.e., between June 2008 through November 2009. Had Plaintiff been offered the opportunity to elect COBRA, the monthly premium cost to her would have been $293 or $5,274.00, so the difference in premiums will be $6,786.00 for the 18 month COBRA period.

(ii) Defendant's payment of all medically related costs and expenses plaintiff has incurred since her employment terminated. To date, $1,267.52.

(iii) Defendant's payment of all costs and expenses that Plaintiff incurs under ICHIP that she would not have had to pay for had she had the opportunity to elect COBRA coverage in the summer of 2007. Under ICHIP there is a 6 month pre-existing condition exclusion, and plaintiff is diabetic.

(iv) Defendant's payment to Plaintiff the sum of $16,170, which represents, the $110 daily amount that an employer can be assessed pursuant to ERISA § 502(c)(1), for failure to provide requested documentation. It took 147 days – between March 1, 2008, through July 25, 2008 – for Defendant to provide the documents she requested on February 25, 2008 (147 x 110 = 16,170).

(v) Defendant's payment to Plaintiff the sum of $54,750, which represents, for an 18 month period, the $100 daily amount that an employer can be assessed pursuant to ERISA § 502(c)(1).

(vi) Defendant's payment of attorney's fees and costs pursuant to ERISA § 502(g)(1). To date (July 31, 2008), approximately $12,575.00.

5.  Names of parties not served

   None.

6.  Major legal issues

   Since Defendant, in e-mail exchanges with Plaintiff on January 8, 2008, has admitted that it "was very lax about sending you the COBRA forms, which was completely our fault," from Plaintiff's perspective the legal issues will focus on how to fashion the remedies, and why the court should exercise its discretion under ERISA § 502(c)(1) to award her the $54,750 referenced in ¶ 4(v).

5

Whether Plaintiff failed to mitigate her damages?

Whether Plaintiff would have elected coverage for one month as stated in her email had she received notice of her option to continue health care coverage.

Plaintiff would cite *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 789 (7th Cir. 1996), for the proposition that the $110 daily penalty should be assessed in an "exceptional case" like this.

Defendant would cite *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 789 (7th Cir. 1996), for the proposition that this case is by no means an "exceptional case" as contemplated by the Court and that monetary relief and penalties are only available for procedural violations in an exceptional case. An exceptional case warranting penalties involves an employer who "must have acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their [sic] employees by inducing their reliance on a faulty plan summary before recovery for procedural violations is warranted." *Id.* at 789.

From Defendant's perspective Plaintiff sued the incorrect legal entity. Taylor Chicago Distributors, Inc. is the proper Defendant.

Since Plaintiff admitted in her June 4, 2007 email correspondence with Kyle Witmer that she would only "need to carry the Cobra Insurance for about a month after I leave," Defendant agrees that the legal issues focus on damages and why the Court should refrain from penalizing Defendant as a result of its purported failure to comply with ERISA.

7.  Principal factual issues

    Whether Taylor Chicago Distributors, Inc. is the proper Defendant.

    Whether Plaintiff failed to mitigate her damages.

    Whether Plaintiff would have elected coverage for one month as stated in her email had she received the paperwork of her option to continue health care coverage.

    Whether Defendant's failure to provide COBRA notification to plaintiff was in retaliation for Plaintiff's complaints to the DOL about Defendant's 401(k) plan.

6

   Whether Defendant received Plaintiff's requests for governing documents of the Taylor Aetna Small Group PPO and the Taylor Chicago Distributors, Inc. 401(k) plan on or about February 25, 2008, but failed to provide that documentation for approximately 147 days.

   Whether Plaintiff's alleged premium differentials set forth in ¶ 4(I) between CORBA rates had Ms. Kolakowski elected coverage and her current rates with ICHIP are accurate.

B.  Preparation of Draft Scheduling Order

  8.  Outline of the scheduling order required by Fed. R. Civ. P. 16(b)

   (a) The parties, through counsel, shall have a Rule 26(f) conference on or before _____, 2008.

   (b) Rule 26(a)(1) disclosures shall occur on or before _____, 2008.

   (c) The joinder of other parties shall occur on or before _____, 2008.

   (d) Amendment to pleadings shall occur on or before _____, 2008.

   (e) Fact discovery shall be completed on or before _____, 2008.

   (f) Expert discovery shall be completed on or before _____, _____.

   (g) Dispositive motions shall be filed on or before _____, _____.

C.  Trial Status

  9.  There has been a request for a jury trial. However, Plaintiff disputes that jury trials are available under ERISA.

D.  Consent to Proceed Before a Magistrate Judge

  10.  The parties have consented to proceed before Magistrate Judge Mason for all proceedings including trial.

E. <u>Settlement Status</u>

11. Plaintiff submitted a settlement demand to Defendant and the parties, through counsel, have discussed the particulars of that demand as recently as April 30, 2008.

On May 6, 2008, Judge Castillo conducted a Settlement Conference in Chambers. The Plaintiff demanded $26,000 plus a $5,000 escrow deposit to cover medical expenses associated with pre-existing conditions not covered by insurance. Defendant offered to settle the matter for a lump sum payment of $25,000 over three months, but the Plaintiff never responded until July 30, 2008, at which time Plaintiff offered to settle the case for $91,548.52.

For the Plaintiff:

*/s/ Stephen B. Horwitz*

Stephen B. Horwitz
Sugarman & Horwitz, LLP
221 N. LaSalle St., Ste. 626
Chicago, IL 60601
312-629-2920

For Defendant:

*/s/ Shelli S. Anderson*

Thomas Vander Luitgaren
Shelli Sloan Anderson
Van Valer Law Firm, LLP
299 W. Main St.
Greenwood, Indiana 46142
317-881-7575